1
2
3
4

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

5
6

7  REYNALDO A. LATRE,                      )    1:09-CV-02177 DLB HC
                                          )
8              Petitioner,                )    ORDER DENYING PETITION FOR WRIT
                                          )    OF HABEAS CORPUS
9      v.                                 )
                                          )    ORDER DIRECTING CLERK OF THE
10  TOM L. CAREY,                         )    COURT TO ENTER JUDGMENT
                                          )
11             Respondent.                )    ORDER DENYING CERTIFICATE OF
                                          )    APPEALABILITY
                _____    )

12
13

Reynaldo A. Latre (hereinafter "Petitioner") is a state prisoner proceeding pro se with a

14

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

15

## **PROCEDURAL HISTORY**

16

Petitioner is currently in the custody of the California Department of Corrections and

17

Rehabilitation pursuant to a judgment of the Fresno County Superior Court.  A jury found Petitioner

18

guilty of possession with intent to pass a counterfeit bill (Cal. Penal Code § 475(a)).  See Respondent

19

("Resp't") Lodged 1.  Petitioner admitted to a prior strike conviction (Cal. Penal Code § 667(b)-(i))

20

and a prior prison term, (Cal. Penal Code § 667.5(b)).  See Resp't Lodged 1; see also Clerk's

21

Transcript ("CT") at 493.  The trial court imposed a sentence of the upper term of three-years

22

doubled for the prior strike plus a one-year enhancement for the prior prison term, for a total

23

sentence of seven years.  See Resp't Lodged 1.

24

On June 17, 2008, in its opinion following Petitioner's direct appeal, the California Court of

25

Appeal affirmed the judgment.  See Resp't Lodged 1.  Petitioner filed a petition for review in the

26

California Supreme Court on July 21, 2008.  See Resp't Lodged 2.  The California Supreme Court

27

denied the petition for review on August 27, 2008.  See Resp't Lodged 3.

28

1    On April 10, 2009, Petitioner filed a habeas petition in the California Supreme Court, which

2    the court denied on August 19, 2009.

3    On December 9, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

4    See Doc. No. 1.  On April 16, 2010, Respondent filed an answer to the petition.  See Doc. No. 14.

5    The parties have consented to Magistrate Jurisdiction.  See Doc. Nos. 6, 11.

6    **FACTUAL BACKGROUND**[1]

7    [Petitioner] arrived at Table Mountain Casino with Melissa Felix, T.J., and two others
     on September 9, 2006.  Felix and T.J. went to a card table.  Felix placed two $100 bills
8    on the table.  The dealer used a special pen to screen for counterfeit bills.  If a mark
     from the pen on a bill appeared black, the bill was fake, but if the ink turned yellow or
9    tan, the bill was probably real.  Felix's two bills passed the pen test; she received chips
     and played.  Felix and T.J. moved to a second table.  Each exchanged two $100 bills
10   for chips; the bills passed the pen test.  As Felix and T.J. played, [Petitioner] came to
     the table to watch and to advise them how to bet.  Felix and T.J. moved to a third
11   table.  Each again tendered two $100 bills for chips.  The bills again passed the pen
     test, and the dealer placed T.J.'s bills in his drop box and gave her chips.  As he was
12   handling Felix's bills, however, he thought they did not feel like real money.  Then he
     noticed that the two bills had the same serial number.  A security officer took the two
13   bills to the cashiers' cage, where they were tested by machine and found to be
     counterfeit.  The security officer led Felix and T.J. to the cage and called the tribal
14   police.

15   Seeing Felix and T.J. led away, [Petitioner] asked the security officer what was
     happening.  "[W]hat's going on with my girls?" he asked.  [Petitioner] referred to Felix
16   and T.J. as his girls.  T.J., who was 17 years old on the date of the incident, knew
     [Petitioner] as "Rey Love."  When told that the women were being questioned about
17   counterfeit money, [Petitioner] took out some of his own money and said, "hey, I got
     all this money, this money ain't fake."
18
     [Petitioner], Felix, and T.J. waited together while casino employees investigated.  The
19   money from the drop boxes at each of the tables where Felix and T.J. had played was
     collected and examined.  Money from the purse kept by an attendant who had given
20   Felix change was also examined.  Meanwhile, a tribal police officer who had arrived
     to help with the investigation asked [Petitioner] to show him the money in his wallet.
21   [Petitioner] complied.  He had 15 $100 bills, which were tested by machine.  One was
     counterfeit.  A total of 13 counterfeit $100 bills, including the one from [Petitioner's]
22   wallet, were identified and turned over to the sheriff's department.

23   A Secret Service agent later examined the 13 bills and confirmed that they were all
     counterfeit.  Further, all 13 bills shared the same check letter, quadrant number, face
24   plate number, and back plate number.  This meant that all 13 were made from the
     same original.[FN2]
25

26   _____

27   [1]These facts are derived from the California Court of Appeal's opinion issued on June 17, 2008.  See Resp't Lodged
     Doc. 1.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is
28   presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1);
     see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

1

2

3

4

> FN2.  The 13 bills also shared a total of four serial numbers, but this did not mean there were four originals.  The sameness of the other identifying numbers meant there was a single original, according to the Secret Service agent.  She said that counterfeiters sometimes change serial numbers on bills made from a single original to increase the appearance of genuineness.

5

6

7

8

9

10

> The district attorney filed an information charging [Petitioner] and Felix as codefendants.  Juvenile charges against T.J. were filed and then dismissed in exchange for her testimony against [Petitioner] and Felix.  The information charged [Petitioner] with (1) passing or attempting to pass counterfeit currency (Pen. Code, § 470, subd. (d)), and (2) possessing or receiving counterfeit currency with intent to pass it or facilitate its passage (§ 475, subd. (a)).  Felix was charged with four counts of passing or attempting to pass counterfeit currency (§ 470, subd. (d)) and one count of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  The information alleged that [Petitioner] had a prior strike (a robbery, § 211) within the meaning of the three-strikes law and was eligible for an enhancement for serving a prior prison term.  Felix was also charged as a second striker because of a prior residential burglary in the State of Washington.

11

12

See Resp't Lodged 1 (some footnotes omitted).

**DISCUSSION**

13

**I.      Jurisdiction and Venue**

14

15

        A person in custody pursuant to the judgment of a state court may file a petition for a writ of

16

habeas corpus in the United States district courts if the custody is in violation of the Constitution or

17

laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v.

18

Taylor, 529 U.S. 362, 375, n.7 (2000).  Venue for a habeas corpus petition challenging a conviction

19

is proper in the judicial district in which the petitioner was convicted.  28 U.S.C. § 2241(d).

20

        As Petitioner asserts that he is in custody pursuant to a State conviction which violated his

21

rights under the United States Constitution, the Court has jurisdiction over this action.  28 U.S.C. §

22

2254(a).  Petitioner was convicted in Fresno County, California, which is within the Eastern District

23

of California, and thus venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(d).

**II.      Standard of Review**

24

25

        On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

26

1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

27

enactment.  Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

28

(9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently

1  governed by its provisions.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Thus, the petition

2  "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was

3  'contrary to, or involved an unreasonable application of, clearly established Federal law, as

4  determined by the Supreme Court of the United States.'"  Irons v. Carey, 505 F.3d 846, 850 (9th Cir.

5  2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall,

6  603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

7          Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

8  Petitioner's habeas petition as Petitioner is in the custody of the California Department of

9  Corrections and Rehabilitation pursuant to a state court judgment.  See Sass v. California Board of

10  Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward,

11  603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly

12  established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538

13  U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal

14  law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's]

15  decisions as of the time of the relevant state-court decision."  Id. (quoting Williams, 529 U.S. at

16  412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal

17  principle or principles set forth by the Supreme Court at the time the state court renders its decision."

18  Id.  Finally, this Court must consider whether the state court's decision was "contrary to, or involved

19  an unreasonable application of, clearly established Federal law."  Id. at 72 (quoting 28 U.S.C. §

20  2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

21  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

22  if the state court decides a case differently than [the] Court has on a set of materially

23  indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.  "Under the

24  'unreasonable application clause,' a federal habeas court may grant the writ if the state court

25  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

26  that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  "[A] federal court may

27  not issue the writ simply because the court concludes in its independent judgment that the relevant

28  state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

1   application must also be unreasonable." Id. at 411.  A federal habeas court making the

2   "unreasonable application" inquiry should ask whether the State court's application of clearly

3   established federal law was "objectively unreasonable." Id. at 409.

4        Petitioner bears the burden of establishing that the state court's decision is contrary to or

5   involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

6   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

7   Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

8   decision is objectively unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While

9   only the Supreme Court's precedents are binding on the Arizona court, and only those precedents

10  need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.

11  Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it

12  can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

13  precedent on a federal Constitutional issue. . . .  This does not mean that Ninth Circuit case law is

14  never relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of

15  determining whether a particular state court decision is an 'unreasonable application' of Supreme

16  Court law, and also may help us determine what law is 'clearly established'").  Furthermore, AEDPA

17  requires that the Court give considerable deference to state court decisions.  The state court's factual

18  findings are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

19  interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

20       The initial step in applying AEDPA's standards is to "identify the state court decision that is

21  appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

22  than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

23  reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

24  that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

25  ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained

26  state court decisions to the last reasoned decision to determine whether that decision was contrary to

27  or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107,

28  1112-13 (9th Cir. 2003).

1    In the instant petition, Petitioner raises five grounds for relief.  Petitioner raised all five

2   grounds through direct appeal to the California Court of Appeal, which affirmed the judgment in a

3   reasoned opinion.  See Answer, Exh. 1.  Petitioner's claims were then raised in a petition for review

4   to the California Supreme Court, which summarily denied review.  See Resp't Lodged 3.  The

5   California Supreme Court, by its "silent order" denying review is presumed to have denied the claim

6   for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797,

7   803 (1991).  Therefore, the Court "look[s] through" this decision to the last reasoned decision, in this

8   case, that of the California Court of Appeal, and analyzes whether the state court's decision was an

9   objectively unreasonable application of federal law.  See Nunnemaker, 501 U.S. at 803-804.[3]

10   **III.    Review of Petitioner's Claims**

11   Petitioner raises five grounds for relief.  Petitioner's Ground One asserts that there was

12   insufficient evidence in support of his conviction.  See Petition at 5.  In Ground Two, Petitioner

13   contends the trial court failed to provide proper limiting instructions regarding the jury's

14   consideration of a co-defendant's out-of-court statement.  See Petition at 5.  In Ground Three,

15   Petitioner argues that the trial court failed to properly instruct the jury regarding Petitioner's potential

16   defense of mistake of fact.  See Petition at 3.  Petitioner's Ground Four asserts that the trial court's

17   determination of his sentence violated his Sixth Amendment rights as afforded under Cunningham v.

18   California, 549 U.S. 270 (2007).  See Petition at 6.  Petitioner's Ground Five alleges the cumulative

19   effect of the alleged errors warrants reversal.  See Petition at 6.

20   **A.    Ground One:  Insufficient Evidence**

21   Petitioner's Ground One contends that there was insufficient evidence supporting the charge

22   that he intended to pass a counterfeit bill because, as Petitioner argues, he did not actually know that

23

24

25    [3]The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in

26   arriving at their decision.  Early v. Packer, 537 U.S. 3, 8 (2002).  Where the state courts have not addressed the constitutional
issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.

27   "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we
can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853

28   (9th Cir. 2003).   Here because the Court of Appeal's reasoned opinion did not address Petitioner's federal constitutional
issues raised in Grounds One and Three, this Court independently reviews the record for these claims.

the currency in his possession was counterfeit.[4]  See Petition at 8.  Additionally, Petitioner contends

that there was insufficient evidence to show he had the specific intent to pass the currency.  See

Petition at 8.  In support of these contentions, Petitioner challenges the consideration of two separate

instances of testimony offered at trial.  First, he contends that because he was acquitted on the charge

of passing or attempting to pass the currency, the jury rejected any testimony introduced to

demonstrate he attempted to or actually exchanged the money.  See Petition at 9-10.  Thus, Petitioner

contends this testimony must also be rejected by reviewing courts when evaluating the sufficiency of

the evidence supporting the § 475(a) charge of intending to pass a counterfeit bill.  See Petition at 9-

10.  Second, Petitioner contends the jury improperly relied on witness testimony which introduced

facially incriminating statements made by his co-defendant as evidence of § 475(a)'s knowledge

requirement.  See Petition at 5.  The California Court of Appeal found that even excluding the

testimony Petitioner claims was rejected or improperly considered, there was sufficient evidence in

support of the conviction.  See Resp't Lodged 1 at 2-4.  In addressing Petitioner's contentions, the

Court of Appeal stated:

> [Petitioner] argues that insufficient evidence was presented at trial to prove that he
> violated section 475, subdivision (a).  Under that statute, one is guilty of forgery "who
> possesses or receives, with the intent to pass or facilitate the passage of any forged,
> altered or counterfeit items, or completed items contained in subdivision (d) of
> section 470 with intent to defraud, knowing the same to be forged, altered, or
> counterfeit. . . ."  [Petitioner] asserts that the prosecution did not prove he knew the
> bill in his wallet was counterfeit or that he had the specific intent to pass it or
> facilitate its passage.  When the sufficiency of the evidence is challenged on appeal,
> "the court must review the whole record in the light most favorable to the judgment
> below to determine whether it discloses substantial evidence-that is, evidence which
> is reasonable, credible, and of solid value-such that a reasonable trier of fact could
> find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26
> Cal.3d 557, 578.)
>
> The evidence that [Petitioner] knew he possessed a counterfeit bill and had the
> specific intent to pass it was sufficient.  The evidence established that [Petitioner]
> came to a gambling casino with companions who proceeded to gamble-with
> [Petitioner's] advice on betting-using counterfeit $100 bills.  [Petitioner's] wallet
> contained a counterfeit $100 bill made from the same original as those used by his
> companions.  A casino employee testified that he observed all the members of
> [Petitioner's] group passing money among themselves 30 minutes to an hour before
> [Petitioner], Felix, and T.J. were detained.  T.J. testified that while the three of them

---

[4]Under Penal Code § 475(a), one is guilty of forgery "who [1] possesses or receives, with [2] the intent to pass or
facilitate the passage of any forged, altered or counterfeit items, . . . with [3] intent to defraud, [and 4] knowing the same to
be forged, altered, or counterfeit."  Cal. Pen. Code § 475(a).

were waiting together during the employees' investigation, [Petitioner] told Felix she should "take the rap" either "for it" or "for him." Further, [Petitioner] told inconsistent stories about where he got the $1,500 in his wallet.  To a deputy sheriff who participated in the investigation at the casino, [Petitioner] said he worked in construction and got the money from the foreman at his job.  He said he did not know the foreman's name.  An investigator for the district attorney testified that he also asked [Petitioner] where he got the money he had at the casino.  [Petitioner] told him "he had been saving the money over a period of time and he gets money through . . . hustling, he braids hair, cuts hair, and also that various females give him money." T.J. testified that after the investigation was over and the three of them had been ordered off the casino property, [Petitioner] said that "his homeboy had hooked him up with some-some hundred dollar bills, some money."

Based on all the evidence, the jury could reasonably infer, beyond a reasonable doubt, that [Petitioner] knew the bill in his wallet was counterfeit and that he possessed it for no reason but to use it. "Possession of forged documents is evidence of knowledge of their spurious nature," and "[t]he necessary fraudulent intent may be inferred from defendant's unauthorized possession of" them.  (*People v. Norwood* (1972) 26 Cal.App.3d 148, 159.)  The evidence here went well beyond possession.  It strongly supported the inference that [Petitioner] came to the casino intending to be part of a group that would divide up a supply of counterfeit money, change it for chips, and gamble with it.  The evidence also supported the conclusion that, after his companions were caught, [Petitioner] took steps to avoid detection of his own role, urging Felix to take the blame and lying about where he got his money, including his counterfeit money.

[Petitioner's] contrary arguments amount only to alternative explanations of the evidence.  He contends, for instance, that because the bill was of above-average quality and fooled two blackjack dealers, he could have mistaken it for real.  This would account for his having one fake bill together with 14 real ones and voluntarily flashing them at the casino security guard and allowing the police officer to take them.  He also suggests that his comment about Felix taking the rap could evince not a consciousness of guilt but a fear of wrongful accusation, and that his inconsistent stories about where he got the money might have referred only to the bills that were real, or might not have been inconsistent because the money could have come from more than one source.  The mere existence of possible explanations for the evidence other than guilt does not show that the conviction was unsupported by substantial evidence.

The parties dispute whether we can rely on evidence that [Petitioner] actually tried to pass counterfeit bills that night at the casino and on one occasion succeeded.  T.J. testified that she saw [Petitioner] unsuccessfully try to feed a $100 bill into a change machine.  Robert Garcia, the casino employee whose purse contained counterfeit $100 bills, testified that he changed one or two $100 bills for [Petitioner].  [Petitioner] points out that this was the evidence supporting the charge of passing counterfeit money, a charge of which he was acquitted.  Citing *People v. Norwood*, *supra*, 26 Cal.App.3d at page 159, the People answer that evidence supporting a charge of which a defendant is acquitted may be considered as support for other charges. [Petitioner] replies that, while this may be so, in this case the jury was responding to the especially weak character of the evidence when it found [Petitioner] not guilty of the charge.  Garcia's claim that [Petitioner] changed a bill or bills with him contradicted his repeated denial of the same at the preliminary hearing, and even at trial he said his level of certainty that it happened was only six on a scale of one to 10.  Further, change machines often reject real bills, so [Petitioner] easily could have been trying to change a real one in the machine.  [Petitioner] asserts that this was all the

evidence there was to support the charge that he passed or attempted to pass counterfeit money; the jury rejected it, so even if it can be considered, it makes no sense to view it as materially helping to prove an intent to pass the counterfeit bill found in his possession.

We need not resolve this dispute.  The evidence of intent to pass the counterfeit bill found in [Petitioner's] possession was sufficient even without these additional items.

Finally, [Petitioner] argues that the jury could not properly rely on hearsay statements by Felix that allegedly incriminated [Petitioner] and that came into evidence via two prosecution witnesses.  We will discuss this evidence under the heading of claimed instructional error in the next section of this opinion.  For purposes of the substantial-evidence analysis, it suffices to say that the evidence was sufficient to prove the offense even without Felix's allegedly incriminating statements.

See Resp't Lodged 1 at 2-4.

The state court's decision was not contrary to or an unreasonable application of clearly established Supreme Court law.  28 U.S.C. § 2254(d)(1).  For purposes of review under the AEDPA, the constitutional standard for a determination of sufficiency of the evidence to support a criminal conviction is set out in Jackson v. Virginia, 443 U.S. 307 (1979), which provides that a habeas petitioner raising a due process challenge to a state court conviction is entitled to relief "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." McDaniel v. Brown, ___U.S.___, 130 S.Ct. 665, 667, 175 L.Ed.2d 582 (2010) ( quoting Jackson, 443 U.S. at 325); see also In re Winship, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").  The test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citation omitted); see also Wright v. West, 505 U.S. 277, 284 (1992).  If the record supports conflicting inferences, the reviewing court "must presume    even if it does not affirmatively appear in the record    that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel, 130 S.Ct. at 673 (quoting Jackson, 443 U.S. at 326); Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991) ("The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached").

On review of an insufficient evidence claim previously adjudicated by the state courts, a federal habeas court must determine whether the state court's decision involved an unreasonable application of the Jackson standard.  Juan H. v. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005).  That is, the federal court may not grant habeas relief unless the state court applied the Jackson standard in an "objectively unreasonable" manner.  McDaniel, 130 S.Ct. at 673 (citing Williams, 529 U.S. at 409); see also Smith v. Mitchell, 624 F.3d 1235, 1239 and n. 1 (9th Cir. 2010) (acknowledging "double layer of deference required by the Jackson standard when it is combined with the standard of [the AEDPA]" and stating that "[c]ases of constitutional insufficiency of evidence where the writ must issue even after consideration of the double level of deference will necessarily be rare, confined to extraordinary cases." (citations omitted)).

The Court agrees with the state court's analysis which found evidence sufficient to support the conviction, even without the alleged offending testimony.  This evidence included casino employee Jeffrey Capra's testimony stating that he observed T.J., Felix, and Petitioner exchanging money approximately thirty minutes before the parties were detained.  See Reporter's Transcript ("RT") at 1034-36.  Additionally, testimony from multiple witnesses established that both T.J. and Felix had accompanied Petitioner that evening and passed counterfeit bills at various times while gambling with Petitioner nearby.  See RT at 253-54, 277-78, 514-17, 650-53, 847.  T.J.'s testimony further supported the prosecution's case, by revealing that after casino security detained T.J. and Felix, Petitioner instructed Felix to "take the rap for it" or "for Petitioner."  See RT at 635.  Next, Petitioner's own statements were inconsistent as Petitioner offered three separate possible explanations for how he obtained the currency.  See RT at 495, 561, 848.  Finally, Petitioner was found in possession of a counterfeit one hundred dollar bill, which was produced from the same original as the remaining confiscated currency.  See RT at 493, 877-879.  When viewed in the light most favorable to the prosecution, the record supported a reasonable inference that Petitioner knew that the currency in his possession was counterfeit and that he possessed the specific intent required to support the charged offense.  The Ninth Circuit has recognized that direct evidence of this knowledge and intent is not necessary; rather, knowledge and intent can be inferred from the circumstances surrounding the transaction.  See United States v. Lorenzo, 570 F.2d 294, 299 (9th

1   Cir. 1978); <u>United States v. Barham</u>, 466 F.2d 1138, 1141 (9th Cir. 1972) (finding that

2   circumstantial evidence before jury of defendant's knowledge that money was counterfeit was

3   sufficient to support jury finding on that issue and affirming conviction under § 472).[5]  This is not an

4   exceptional case where there was no evidence from which a rational jury could have found the

5   elements of the crime beyond a reasonable doubt.  <u>Miller v. U.S.</u>, 392 F.2d 790, 791-792 (10th Cir.

6   1968) (finding insufficient evidence of passing and uttering counterfeit where defendant's merely

7   accompanied his brother to multiple bars while his brother passed counterfeit bills).  The Court

8   agrees with the Court of Appeal's assessment that:  "[t]he evidence here went well beyond

9   possession.  It strongly supported the inference that [Petitioner] came to the casino intending to be

10  part of a group that would divide up a supply of counterfeit money, change it for chips, and gamble

11  with it."  <u>See</u> Resp't Lodged 1.

12      Viewing the trial evidence in a light most favorable to the prosecution and affording

13  appropriate deference to the jury's determination, it was objectively reasonable for the state appellate

14  court to conclude that a rational jury could find Petitioner guilty of possession with intent to pass

15  counterfeit bills.  Accordingly, the adjudication of this claim by the California Court of Appeal was

16  not contrary to or an unreasonable application of the <u>Jackson</u> standard, and federal habeas relief is

17  therefore unavailable.

18      **B.      Ground Two:  The trial court's limiting instruction regarding the jury's
        consideration of Petitioner's co-defendant's out-of-court statement**

19

20      In Ground Two, Petitioner contends the trial court's instructions, both CALCRIM 305 and

21  358, provided conflicting instruction regarding the jury's consideration of Petitioner's co-defendant's

22  out-of-court statements.  The trial court first provided CALCRIM 305 which read:

23      You've heard evidence that each of the defendants made a statement or statements out
        of court.  You may consider that evidence only against the defendant alleged to have
        made the statement, not against the other defendant.

24

25  <u>See</u> RT at 1109.

26  _____

27  [5]Additionally, the requisite knowledge may be inferred from the acts of the defendant. <u>United States v. Lorenzo</u>, 570 F.2d 294, 299 (9th Cir. 1978).  A jury may consider the defendant's surreptitious conduct, <u>United States v. Hudson</u>, 609 F.2d 1326, 1329 (9th Cir. 1979), or segregation of counterfeit bills or "inconsistent exculpatory statements concerning the

28  source of the [counterfeit] bills . . . can be regarded as evidence of consciousness of wrongdoing." <u>United States v. McCall</u>, 592 F.2d 1066, 1068 (9th Cir. 1979), cert. denied, 441 U.S. 936.

1    Moments later, the trial court provided a modified version of CALCRIM No. 358:

2    You have heard evidence that the defendant has made oral or written statements
     before the trial.  You must decide whether or not the defendants made any of these
3    statement[s] in whole or in part.  If you decide that either or both defendants made
     such statements, consider the statements along with all the other evidence in reaching
4    your verdict.  It's up to you to decide how much importance to give to such
     statements.
5
     You must consider with caution evidence of a defendant's oral statement unless it was
6    written or otherwise recorded.

7    See RT at 1109-10.

8         Petitioner contends that the second instruction negated the first resulting in the jury's

9    improper consideration of testimony introducing his co-defendant's (Felix's) out-of-court

10   statements.  Petitioner opines that the jury, via the testimony of Agents Reye Diaz and Micah

11   Scott, was improperly provided:

12        . . . information, based on Felix's out of court statements that: (1) [Felix] knew the
          $100 bills were counterfeit when she went to the casino; (2) as she entered the casino,
13        she told one of her companions, Johnson, that the $100 bills were counterfeit; and (3)
          she made reference to two other people who went to the casino with her.
14
     See Petition at 14.
15
          Because Felix's statements indicated that both T.J. and Felix knew the bill was
16
     counterfeit, Petitioner contends that the jury would have inferred that Petitioner also knew the
17
     bill was counterfeit.  See Petition at 19-20.  In sum, Petitioner contends that trial court's
18
     flawed instructions allowed the jury to improperly consider Felix's out-of- court statements
19
     which violated his confrontation and due process rights as provided under Bruton v. United
20
     States, 391 U.S. 123 (1968) ("Bruton") and Crawford v. Washington, 541 U.S. 36 (2004)
21
     ("Crawford").
22
          Addressing Petitioner's claim, the Court of Appeal stated:
23
     Under the Aranda-Bruton rule, it is error in a joint criminal trial to admit a confession
24   by a nontestifying codefendant that incriminates another codefendant, even if the jury
     is instructed not to consider the hearsay as evidence against that other codefendant.
25   (*People v. Aranda,* (1965) 63 Cal.2d 518, 528-530; *Bruton v. United States*, (1968)
     391 U.S. 123, 123-124, 126.)  The rule is motivated by the concern that inculpation
26   of a defendant by a nontestifying codefendant's hearsay violates the defendant's rights
     under the confrontation clause of the Sixth Amendment to confront and
27   cross-examine his accusers.  (*Bruton v. United States*, *supra*, at pp. 126, 136; *People
     v. Fletcher* (1996) 13 Cal.4th 451, 455, 465.)  The rule applies even where the hearsay
28   statement has been redacted or sanitized to replace the nondeclarant defendant's name

U.S. District Court
E. D. California                                          12

with a blank space. (*Gray v. Maryland,* (1998) 523 U.S. 185, 188, 194-195.) On the other hand, the rule has been held not to require exclusion of evidence (or separate trials) where the codefendant's confession was redacted to eliminate any indication that there was another perpetrator. Under those circumstances, the confession can be admitted in a joint trial with a limiting instruction. (*Richardson v. Marsh,* (1987) 481 U.S. 200, 203, 211.)

[Petitioner] claims that several hearsay statements by Felix, which were introduced via the testimony of prosecution witnesses, incriminated him in violation of his confrontation clause rights. Reye Diaz, a special agent of the California Department of Justice, testified that T.J. told him that Felix told T.J. the bills were counterfeit. Micah Scott, another special agent of the Department of Justice, testified that Felix admitted she knew the bills were counterfeit and that using them was wrong. He also testified that Felix made reference to "two other individuals who she also went to the casino with." . . . Other evidence showed that Latre was one of the people who came to the casino with Felix. His contention that this evidence incriminated him appears to be based on the notion that the jury could infer that everyone with Felix knew what she knew.

Under *Richardson v. Marsh*, *supra*, 481 U.S. 200, the evidence here was admissible with a limiting instruction. Like the defendant in *Richardson*, [Petitioner] was "linked to the confession" only "by evidence properly admitted against him at trial." (*Id.* at p. 202.) True, this case differs from <u>Richardson</u> in that, here, the hearsay referred to companions, one of whom turned out to be [Petitioner]. In the form in which they were admitted, however, Felix's statements did not state or imply that those unnamed companions were coperpetrators. In fact, although the court and parties discussed, outside the presence of the jury, a hearsay statement by Felix to the effect that [Petitioner] gave her the counterfeit money and asked her to pass it, this statement was never introduced, not even with [Petitioner's] name omitted. As presented to the jury, Felix's statements showed only that she was in the company of other people when she came to the casino to pass counterfeit money.

In fact, [Petitioner] does not argue that the statements were not admissible in the joint trial. "It is not the admission of Felix's out-of-court statement that appellant challenges on appeal," he says. Instead, he contends that the court failed to give an adequate limiting instruction.

   . . .

[Petitioner] argues that the second instruction, negated the first and improperly allowed the jury to consider Felix's hearsay statements not only against Felix but also against him.

[Petitioner] did not object to the instructions at trial, but an appellate court can address an incorrect instruction to which no objection was made at trial if the instruction impaired the defendant's substantial rights. (§ 1259.) Further, the court must give some instructions sua sponte . . . .

   . . .

The court has no duty to give an instruction if it is repetitious of another instruction the court gives. (*People v. Turner*, (1994) 8 Cal.4th 137, 203, overruled on other grounds by *People v. Griffin*, (2004) 33 Cal.4th 536, 555, fn. 5.) "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People v.*

*Musselwhite*, (1998) 17 Cal.4th 1216, 1248.)  Jurors are generally presumed to follow instructions.  (*People v. Yeoman*, (2003) 31 Cal.4th 93, 139.)  We review the correctness of jury instructions de novo.  (*People v. Waidla*, (2000) 22 Cal.4th 690, 733.)

Applying these standards, we conclude that the instructions were adequate.  The court instructed the jury not to use one defendant's out-of-court statements against the other defendant.  There is no reason to think this instruction was erased from the jurors minds when, almost immediately, the court followed up by telling the jury to decide whether the out-of-court statements were really made, and, if they were made, to consider them and decide how much weight to give them.  When viewed as a whole, the instructions reveal no error on this point.

Latre also argues that "the combination of the introduction of Felix's out of court statements and the modified CALCRIM 358" violated the confrontation clause as interpreted in *Crawford v. Washington*, (2004) 541 U.S. 36, 53-54, 59, 68-69, which held that testimonial hearsay incriminating a defendant is inadmissible unless the declarant is unavailable to testify at trial and the defendant had a pretrial opportunity to cross-examine the declarant.  There was no confrontation clause violation for the reasons we have already stated:  The statements did not incriminate Latre, and the jury instructions adequately directed the jurors not to use them against him.

See Resp't Lodged 1.

In general, challenges to jury instructions are issues of state law and are not cognizable in a federal habeas corpus action.  Estelle v. McGuire, 502 U.S. 62, 71 72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  Id. at 72.  Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.  Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).  Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.  Id.

The Court agrees with the Court of Appeal that the instructions as a whole in the present case clearly informed the jury that it must not use one defendant's out-of-court statements against the other defendant.  See RT at 1109.  The jury is presumed to have followed its instructions.  See

1   Weeks v. Angelone, 528 U.S. 225, 226 (2000).  Petitioner has not shown a reasonable likelihood that

2   the jury construed the instructions to permit the jury to consider Petitioner's co-defendant's out-of-

3   court statements in its finding of Petitioner's guilt.  Thus, Petitioner has failed to demonstrate that

4   the instructions provided resulted in a "a substantial and injurious effect" on the trial's outcome.

5   Brecht, supra, 507 U.S. at 637.

6          Similarly, though raised only indirectly by Petitioner, the Court finds no merit to Petitioner's

7   contentions regarding either Aranda-Bruton or Crawford.  Under Bruton, a criminal defendant is

8   deprived of his Sixth Amendment right of confrontation when an incriminating confession of a

9   nontestifying co-defendant is introduced at their joint trial, even if the jury is instructed to consider

10  the confession only against the co-defendant.  Bruton, supra, 391 U.S. at 134-135.[6]  However, in

11  Richardson v. Marsh, the Supreme Court limited the scope of the Aranda-Bruton rule.  Richardson v.

12  Marsh, 481 U.S. 200 (1987).  The Richardson Court held that introduction of the statement of a co-

13  defendant that (1) does not facially incriminate the defendant and (2) is qualified by a proper limiting

14  instruction, does not violate the defendant's constitutional right of confrontation.  Id. at 207.  Later,

15  in Crawford, the high court also precluded admission of out-of-court testimonial statements admitted

16  *against* defendant unless the witness was unavailable and defendant previously had an opportunity

17  for meaningful cross-examination.  Crawford, supra, 541 U.S. at 59, 68.  However nothing in

18  Crawford suggests a retraction of Richardson.

19         In the instant matter, Petitioner's co-defendant's statements indicated only that she and T.J.

20  had knowledge that the bills were counterfeit and that she was accompanied by two other unnamed

21  persons.  These statements do not qualify as incriminating statements offered against Petitioner.  The

22  reference to two other people could have referred to anyone; Petitioner's name was not mentioned,

23  and the statements contained nothing that would otherwise identify Petitioner.[7]  Because the

24

25  [6]The two cases, both People v. Aranda, 63 Cal.2d 518 (1965) ("Aranda") and Bruton v. United States, 391 U.S. 123 (1968) ("Bruton") are collectively referred to as "Aranda-Bruton."

26  [7]The Supreme Court's holding in Gray v. Maryland, 523 U.S. 185 (1998) is particularly instructive in this instance.

27  In Gray, a co-defendant was asked by the police, "Who was in the group that beat Stacey?"  The co-defendant's redacted answer, as introduced at trial, was, "Me, deleted, deleted, and a few other guys," with the "deleted"s substituting for the co-defendants' names.  The Supreme Court found the co-defendant's announcement that a name had been redacted, sufficiently

28  incriminated the defendant as to fall within Bruton's prohibition against the use of jointly-incriminating statements.  As an

1    statements at issue in the instant petition were not otherwise facially incriminatory against Petitioner

2    and because the trial court provided a proper limiting instruction, the Court concludes that no error

3    occurred under either Aranda-Bruton or Crawford.

4         In any event, both Aranda-Bruton and Crawford claims are subject to harmless error analysis.

5    See Lilly v. Virginia, 527 U.S. 116, 139-40 (1999) (plurality opinion) (claim of Bruton error, as with

6    any other claim under the Confrontation Clause, is subject to harmless error review); see also Slovik

7    v. Yates, 556 F.3d 747, 755 (9th Cir. 2009) ( "Confrontation Clause errors are subject to

8    harmless-error analysis").  As already discussed above, there was sufficient compelling independent

9    evidence against Petitioner. For this same reason, admission of Petitioner's co-defendant's

10   statements, which was not facially incriminating towards Petitioner, did not have a substantial and

11   injurious effect or influence in determining the jury's verdict.  Brecht, supra, 507 U.S. at 638.

12        **C.      Ground Three:  The trial court's failure to provide an instruction addressing**
          **Petitioner's defense of mistake of fact**
13

14        Petitioner claims that the trial court violated his federal right to due process and his Sixth

15   Amendment rights by failing to sua sponte instruct the jury on the defense of mistake of fact as it

     related to the charge of possession with intent to pass counterfeit currency.
16

17        Due process requires that "'criminal defendants be afforded a meaningful opportunity to

18   present a complete defense.'"  Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California

     v. Trombetta, 467 U.S. 479 (1984).  Therefore, a criminal defendant is entitled to adequate
19

20   instructions on the defense theory of his case.  See Conde v. Henry, 198 F.3d 734, 739 (9th Cir.

21   2000) (holding that it was error to deny defendant's request for instruction on simple kidnaping

22   where such instruction was supported by the evidence).  This right is limited to situations where "the

     theory is legally cognizable and there is evidence upon which the jury could rationally find for the
23

24   defendant."  United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009). Moreover, while a

25   defendant is entitled to adequate instructions on the defense theory of the case, see Conde, 198 F.3d

26   at 739, he is not entitled to have instructions prepared in his precise terms where the other

27   instructions given sufficiently embody the defense theory.  Where, as here, the challenge is to a

28   _____

acceptable alternative, however, the Supreme Court proposed "Me and a few other guys." Id. at 196.

failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977); see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997). In order to prevail upon a claim that the trial court failed to give an instruction, Petitioner must demonstrate that the alleged failure had a "substantial and injurious effect" on the outcome of his trial. In other words, Petitioner is required to show that there is a "reasonable probability" that, had the instruction been given, the jury would have reached a different verdict. Clark v. Brown, 450 F.3d 898, 916 (9th Cir. 2006).

The California Court of Appeal, considered and rejected Petitioner's claim on the merits, explaining its reasoning as follows:

> [Petitioner] argues that the court erred when it did not give, on its own motion, a jury instruction on the defense of mistake of fact. He claims the evidence warranted an instruction that the jury should acquit him if he mistakenly believed all the money in his possession was genuine.
>
> . . .
>
> [Petitioner] did not request this instruction, but a trial court must instruct on a defense sua sponte if it appears that the defendant is relying on the defense or if substantial evidence supports the defense and it does not conflict with the defendant's theory of the case. (*People v. Dominguez*, (2006) 39 Cal.4th 1141, 1148.)
>
> [Petitioner] contends that several facts presented to the jury constituted substantial evidence in support of this defense. For instance, he voluntarily showed the money to a guard and claimed it was all genuine, and later consented to the examination of the money by casino employees. He would not have done these things if he had known one of the bills was counterfeit. Also, there was expert testimony that the counterfeit bill he possessed was of above-average quality; it could easily have fooled a nonexpert like [Petitioner]. [Petitioner] was cooperative, made no attempt to flee, and did not try to conceal his identity.
>
> We need not decide whether the evidence warranted the instruction. Any error in failing to give it was harmless beyond a reasonable doubt because the instructions given on the elements of the crime gave the jury the same information that the instruction on the defense would have given. The court instructed the jury on the elements of possession of counterfeit currency pursuant to CALCRIM No.1930:
>
>> "The defendant, Reynaldo Latre, is charged in Count Two with possessing or receiving counterfeit U.S. currency."
>>
>> "To prove that the defendant is guilty of this crime, the People must prove that:
>>
>> One, the defendant possessed or received counterfeit U.S. currency;

Two, the defendant knew the currency was counterfeit;

And three-or excuse me. Three, the defendant intended to pass or use, or aid the passage or use of the document as genuine;"

"And when the defendant possessed or received the document, he intended to defraud."

"Someone intends to defraud if he or she intends to deceive another person either to cause a loss of money or goods, or services, or something else of value, or to cause damage to, a legal, financial, or property right."

The court also instructed the jury in accordance with CALCRIM No. 251:

"Every crime charged in this case requires proof of the union, or joint operation, of act and wrongful intent."

"In order to be guilty of the crimes of passing or attempting to pass counterfeit U.S. currency in violation of Penal Code Section 470(d) or the crime of possessing or receiving counterfeit U.S. currency with the intent to pass the same, a person must not only intentionally commit the prohibited act, but must do so with a specific intent. The act and the intent required are explained in the instruction for each of these crimes."

When, having heard these instructions, the jury found [Petitioner] guilty of possessing a counterfeit bill with intent to pass it, it necessarily found that he did not mistakenly believe the bill was genuine, for it had to find that he knew it was counterfeit and that he intended to defraud. When a jury resolves a factual question against a defendant under one instruction, the failure to put the same question to the jury in a different instruction is not reversible error. (*People v. Wright*, (2006) 40 Cal.4th 81, 99; *People v. Allison*, (1989) 48 Cal.3d 879, 897.)

In *People v. Wright*, *supra*, 40 Cal.4th 81, our Supreme Court applied this rule to a situation like the present one: The omission of a defense instruction was harmless because the jury necessarily rejected the factual predicate of the defense when it found that the prosecution proved the elements of an offense. Wright was convicted of possession of marijuana for sale and transportation of marijuana. (*Id.* at p. 86.) He argued on appeal that the jury should have been instructed on the Compassionate Use Act as a defense to the transportation charge. (*People v. Wright*, *supra*, at p. 98.) The instruction would have stated that the defendant was not guilty if the marijuana in his possession was for his personal medical use. (*Id.* at p. 99.) The Supreme Court held that omission of the instruction was not reversible error because the jury necessarily found that the marijuana was not for the defendant's personal use when it found him guilty of possession for sale. (*Ibid.*) Here, similarly, the mistake-of-fact instruction would only have asked the jury to make again a finding it had already made under the instructions on the elements of the offense. Consequently, the error of omitting the instruction, if any, was harmless under the standard of *Chapman v. California*, (1967) 386 U.S. 18, 24. (*People v. Wright*, *supra*, 40 Cal.4th at p. 98.)

See Resp't Lodged 1.

A criminal defendant is indeed entitled to instructions on his theory of defense. On review,

1   however, Petitioner has failed to show a reasonable probability that, had an instruction been given on

2   the mistake of fact defense in the context of the section 475(a) charge, the jury would have reached a

3   different verdict.  Clark, supra, 450 F.3d at 916.  The appellate court correctly concluded that any

4   alleged error in failing to give such instruction was harmless.

5          Petitioner's jury was instructed that, in order to find him guilty of unlawfully possessing

6   counterfeit currency, the prosecution must prove, among other elements, that he "knew the currency

7   was counterfeit."  See CT at 407, RT at 1117-18.  The trial court further instructed the jury that his

8   unlawful act had to be accompanied by specific intent of "intending to pass or use, or aid the passage

9   or use of the document as genuine"  See CT at 407, RT at 1117-18.  The instructions given

10  adequately embodied the defense's theory of the case: that Petitioner was unaware that the currency

11  in his possession was in fact counterfeit.  Under federal law, when a trial court's instructions

12  adequately encompass the defense theory of the case, the failure to give specific instructions on that

13  theory does not violate due process.  See Duckett v. Godinez, 67 F.3d 734, 745  46 (9th Cir. 1995)

14  (no constitutional error found on habeas corpus review in state court's failure to give alibi

15  instruction); United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990) ("it is not reversible error

16  to reject a defendant's proposed instruction on his theory of the case if other instructions, in their

17  entirety, adequately cover that defense theory").

18         The appellate court's finding that the alleged failure to give the instruction amounted to no

19  more than harmless error is not contrary to or an unreasonable application of clearly established

20  federal law.  Petitioner has failed to meet the heavy burden requiring him to demonstrate that the trial

21  court's alleged error so infected his trial that his conviction violates due process.  Petitioner is not

22  entitled to federal habeas corpus relief on this claim.

23         **D.      Ground Four:  Petitioner's claim the trial court's sentencing determination**
                   **violated his Sixth Amendment rights**

24

25         Petitioner claims that in determining his sentence, the trial court's reliance on aggravating

26  factors that were not proved by a jury violated his Sixth Amendment right to trial by jury as set out in

27  Cunningham v. California, 549 U.S. 270 (2007).  The aggravating factors that the trial court

28  considered included but were not limited to:  "[Petitioner's] ongoing criminal history involving theft

1    and violence since his robbery conviction back in November of 2000 in [the] case ending 470-8, his

2    subsequent convictions in case 939-6, and the case ending [with] 751-9." See RT at 1216; see Cal.

3    Rule of Court 4.421(b) (listing factors to be considered in setting aggravated, middle or mitigated

4    term)).  The trial court found that these factors outweighed the "possible" mitigating factors.  See RT

5    at 1216.

6           In Apprendi, the Supreme Court held that any fact that increases the penalty for a crime

7    beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a

8    reasonable doubt.  Apprendi, 530 U.S. at 466.  In Blakely, the Supreme Court explained that "the

9    statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on

10   the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely, 542 U.S. at

11   303.  This means that the "the middle term prescribed in California's statutes, not the upper term, is

12   the relevant statutory maximum."  Cunningham, 549 U.S. at 293.  In Cunningham, the Supreme

13   Court, citing Apprendi and Blakely, held that California's Determinate Sentencing Law violates a

14   defendant's right to a jury trial to the extent that it contravenes "Apprendi's bright-line rule: Except

15   for a prior conviction, 'any fact that increases the penalty for a crime beyond the statutory maximum

16   must be submitted to a jury, and proven beyond a reasonable doubt.'" Ibid. (quoting Apprendi, 530

17   U.S. at 490) (emphasis added).

18          As the Court of Appeal recognized in rejecting Petitioner's claim, there was no constitutional

19   error in imposing the upper term in this case.  The exception to the general rule in Apprendi

20   providing that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury

21   beyond a reasonable doubt, applies.  Butler, 538 F.3d at 643 (citing Apprendi, 530 U.S. at 490 and

22   Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998)).  Contrary to Petitioner's contentions

23   that the "prior conviction" exception is no longer viable, the Ninth Circuit has recognized that "the

24   Supreme Court has not overruled the Almendarez-Torres exception for prior convictions" and

25   therefore the "obligation to apply the Almendarez-Torres exception [remains] unless and until it is

26   rejected by the Supreme Court."  Butler, 528 F.3d at 643-44.  Here, Petitioner was sentenced to the

27   aggravated term based on, among other factors, his multiple prior convictions.  See RT at 1216.

28   Under the exception set forth in Almendarez-Torres and Apprendi for aggravating factors based

1   upon a prior conviction, the Sixth Amendment did not require that a jury find that Petitioner suffered

2   prior convictions, and the trial court could rely on its own finding of this aggravating circumstance in

3   sentencing Petitioner to the upper term.

4        The fact that the trial court may have also found aggravating circumstances separate from

5   Petitioner's prior convictions, does not alter this conclusion. "[U]nder California law, only one

6   aggravating factor is necessary to set the upper term as the maximum sentence." Butler, 528 F.3d at

7   641. "[I]f at least one of the aggravating factors on which the judge relied in sentencing [petitioner]

8   was established in a manner consistent with the Sixth Amendment, [petitioner's] sentence does not

9   violate the Constitution." Id. at 643. Therefore, as it was within the trial court's discretion to

10  sentence Petitioner to the upper term based solely upon his prior convictions, Petitioner's sentence is

11  constitutional irrespective of "[a]ny additional fact finding." Ibid. Because the trial court relied

12  upon at least one factor established in a manner consistent with the Sixth Amendment, the sentence

13  Petitioner received did not violate his Sixth Amendment rights.

14       For these reasons, the state courts' rejection of this claim was not contrary to, or an

15  unreasonable application of, clearly established United States Supreme Court authority.

16       **E.      Ground Five: Cumulative Error**

17       In his last ground for relief, Petitioner contends that the cumulative effect of the alleged

18  errors warrants reversal. "The Supreme Court has clearly established that the combined effect of

19  multiple trial court errors violates due process where it renders the resulting criminal trial

20  fundamentally unfair. [Citation] The cumulative effect of multiple errors can violate due process

21  even where no single error rises to the level of a constitutional violation or would independently

22  warrant reversal." Pale v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v.

23  Mississippi, 410 U.S. 284, 290 n. 3, 298, 302-303 (1973)); see also Whelchel v. Washington, 232

24  F.3d 1197, 1212 (9th Cir. 2000) (noting that cumulative error applies on habeas review). Here, the

25  California Court of Appeal found the cumulative effect of the alleged errors did not warrant

26  "reversal, retrial, or dismissal. See Resp't Lodged 1. The Court agrees that Petitioner's right to a

27  fundamentally fair trial was not implicated by these alleged errors; therefore, the state court's

28  decision finding no cumulative error is not an objectively reasonable application of Supreme Court

1  precedent and Petitioner is not entitled to habeas corpus relief on this ground.

2  **IV.      Certificate of Appealability**

3          A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

4  district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-

5  El v. Cockrell, 537 U.S. 322, 336  (2003).  The controlling statute in determining whether to issue a

6  certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

7  issue a certificate of appealability where "the applicant has made a substantial showing of the denial

8  of a constitutional right."  Where the court denies a habeas petition, the court may only issue a

9  certificate of appealability "if jurists of reason could disagree with the district court's resolution of

10  his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

11  encouragement to proceed further."  Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473,

12  484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate

13  "something more than the absence of frivolity or the existence of mere good faith on his . . . part."

14  Miller-El, 537 U.S. at 338.  In the present case, the Court finds that reasonable jurists would not find

15  the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus

16  Petitioner's claim is not deserving of encouragement to proceed further.  Consequently, the Court

17  hereby denies a certificate of appealability.

18                                        **ORDER**

19          Accordingly, the Court ORDERS that:

20          1.       The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

21          2.       The Clerk of the Court is DIRECTED to enter Judgment for Respondent; and

22          3.       A Certificate of Appealability is DENIED.

23           IT IS SO ORDERED.

24      **Dated:    July 5, 2011                      /s/ Dennis L. Beck**
                                            UNITED STATES MAGISTRATE JUDGE

25

26

27

28